*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIANNA TALYNN LIPSCOMB, also known as
BRIANNA TAYLYNN LIPSCOMB,

        Defendant-Appellant.

UNPUBLISHED
July 16, 2026
1:31 PM

No. 373953
Ionia Circuit Court
LC No. 2024-036468-AR

Before: GADOLA, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] her jury-trial conviction of misdemeanor animal cruelty, MCL 750.50(4)(a). Defendant argues that the trial court erroneously admitted evidence arising from an unconstitutional search and that her 93-day jail sentence was unreasonable and disproportionate. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant lived in the upstairs apartment of a two-unit rental property in Ionia County. Paul Burns lived in the downstairs unit. Burns knew that defendant had a dog because he occasionally saw the dog when defendant tied it up outside or walked with it to retrieve her mail. During the first week of December 2022, Burns heard defendant's dog moving around upstairs and barking for long periods of time. After days of consistent barking, Burns contacted Ionia Animal Control on December 7, 2022 and reported that the dog had been unattended for six or seven days. Burns also reported the situation to defendant's landlord, Timothy Todd.

That same day, Animal Control Officer Carly Quinn responded to the apartment building and saw the frantic-looking dog barking through an upstairs window. Officer Quinn knocked on

---

[1] *People v Lipscomb*, unpublished order of the Court of Appeals, entered August 13, 2025 (Docket No. 373953).

the door of defendant's apartment but did not receive a response. She left two door hangers on the property to notify the resident that she had been there and stating the time of and reason for the visit. On December 8, 2022, Todd called Officer Quinn, reported his concerns about defendant's dog, and offered to allow her to enter defendant's apartment with the maintenance manager, Robert Allen Bliss. Officer Quinn agreed and met Bliss at the apartment. They knocked on the door but received no response. Before entering, Officer Quinn again observed the dog acting frantically in the window, and he detected a strong smell of urine and feces from outside the apartment. Bliss unlocked the door, and the two entered.

Once inside, Officer Quinn and Bliss noticed debris, trash, several puddles of urine, and "approximately 15-20 piles of feces" on the floor. The dog had access to a small amount of dog food but no water. Because she "felt that the conditions were unsanitary and hazardous," Officer Quinn removed the dog and left a new hanger on the door.

Defendant was charged with misdemeanor animal cruelty. Before trial, defendant moved to suppress any evidence obtained from the allegedly unauthorized search of her home. The prosecution filed a response to the motion, attaching defendant's lease agreement, which contained the following provision:

> Landlord's Rights Concerning Entry. Landlord reserves the right to repair, show unit, or inspect the Premises upon twenty-four (24) hour notice. In the event of emergencies, the Landlord may enter without notice.

The district court held a suppression hearing, after which it denied defendant's motion to suppress largely on the basis of this provision.

After a trial, the jury found defendant guilty of misdemeanor animal cruelty, and the district court sentenced defendant as described. Defendant then appealed to the circuit court, arguing that the evidence arising from the allegedly unconstitutional search should have been suppressed and that the district court's sentence was not proportionate to the seriousness of the circumstances surrounding the offense and the offender.

The circuit court characterized the search issue as one of "third-party consent" and remarked that it was "obvious there was a problem going on in the defendant's apartment." It noted that the record showed that "there was an odor coming from" the apartment. The court found that the landlord gave "valid consent" under the emergency exception in the lease. Addressing defendant's sentence, the court noted that defendant "had a disregard for court orders" and had "admittedly left the state" while out on bond. The court considered "whether rehabilitation was something that was appropriate in this sentence." On the basis of its review of the record and facts, it found that the district court had "reasonable grounds" for the sentence it imposed. Accordingly, the circuit court affirmed the district court. This appeal followed.

## II. SEARCH

Defendant argues that the search of her apartment violated her Fourth Amendment right against unreasonable searches because her landlord lacked the authority to consent to entry. We disagree.

## A. STANDARD OF REVIEW

We review for clear error a trial court's factual findings at a suppression hearing. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). We review the ultimate decision on a motion to suppress de novo, including the issue of whether a search violated the Fourth Amendment. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009).

## B. ANALYSIS

"Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001), citing US Const, Am IV; Const 1963, art 1, § 11. Generally, "searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement." *Beuschlein,* 245 Mich App at 749.

"Consent searches, when voluntary, are an exception to the warrant requirement." *People v Frederick*, 500 Mich 228, 242; 895 NW2d 541 (2017). "The consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001) (quotation marks and citation omitted). Consent to search may also be revoked or limited in scope. *Id*. at 703. "An owner may not give consent to search premises of a tenant unless contractually provided for." *People v Chism*, 390 Mich 104, 134; 211 NW2d 193 (1973).

In this case, Todd had the authority to consent to the search of defendant's apartment. Defendant executed a lease agreement that gave the landlord[2] the right to repair, inspect, or show the apartment "upon twenty-four (24) hour notice" or to enter without notice "[i]n the event of emergencies." The prosecution does not dispute that defendant did not receive notice, so Todd would only have the right to enter the property if an "emergency" existed that would grant him a right of entry.

The word "emergencies" was not defined in the lease. Absent a specific definition, words in a contract are assigned "their ordinary and plain meaning if such would be apparent to a reader of the instrument." *Auto Owners Ins Co v Seils*, 210 Mich App 132, 145; 871 NW2d 530 (2015) (quotation marks and citation omitted). We may consult a dictionary to ascertain the plain and ordinary meaning. *Id*. The word "emergency" is generally defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action" or "an urgent need for assistance or relief." *Merriam-Webster's Collegiate Dictionary* (11th ed.).

The evidence supports that an emergency existed in this case. Todd testified at the suppression hearing that he became aware of the unattended dog when Burns reported concerns to

---

[2] Defendant entered into the lease with the previous owner/landlord, but Todd testified that he "assumed the lease through the purchase of the property."

him and when one of his agents discovered the tag that Officer Quinn had left on defendant's door. He contacted his attorney before deciding to enter. After Quinn and Bliss entered the apartment and saw the urine and feces, Todd's agents "went right in and started cleaning where the dog was because it was a detriment to the lower level tenant." He believed that "[t]here was nothing routine about this situation." Even if Officer Quinn had not been there, he would have called an animal control officer to the apartment because the dog was a pit-bull, and he did not know "how vicious it was." The damage to the apartment was so "extensive" that the property owner had "to file a claim." The dog had chewed most of the woodwork in the room where it was confined, and the feces and urine presented "quite a cleanup mess." Todd also testified that Burns had reported that the water was running in the upstairs apartment. Although he was able to shut off the water without entering defendant's apartment, he wanted to investigate any possible flooding.

Because of concerns about the dog's welfare, the odor and constant barking that created a possible nuisance to another tenant, and the likelihood of damage from water, urine, and feces, we hold that the district court did not clearly err when it found that an emergency existed under defendant's lease. That emergency gave the landlord and his agents the authority to enter defendant's apartment without notice to address the emergency, which required bringing in an animal control officer to safely remove the dog. Under these circumstances, Todd's consent to allow Officer Quinn to enter the apartment was within his contractual authority. Because a person with proper authority consented to the search, Officer Quinn's entry into defendant's home did not violate the Fourth Amendment. See *Frohriep*, 247 Mich App at 702. Accordingly, the district court did not err by denying defendant's motion to suppress evidence obtained from the search of her apartment.

## III. SENTENCING

Defendant argues that her 93-day jail sentence was unreasonable[3] and that it must be vacated because the district court's stated reasons for departing from the presumption of a nonjail or nonprobation sentence were insufficient. We disagree.

## A. STANDARD OF REVIEW

"[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id.* at 477. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or when it makes an error of law. *People v Butka*, 514 Mich 366, 376; 22 NW3d 429 (2024).

---

[3] We note that this issue is not moot because defendant was released on bond while her appeals were pending, so she has not completed her jail sentence.

## B. ANALYSIS

"Unlike cases involving felony convictions, there are no sentencing guidelines that a sentencing court must consult when sentencing a person convicted of only a misdemeanor offense." *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 3. However, MCL 769.5 provides, in relevant part, as follows:

> (3) There is a rebuttable presumption that the court shall sentence an individual convicted of a misdemeanor, other than a serious misdemeanor, with a fine, community service, or other nonjail or nonprobation sentence.

> (4) The court may depart from the presumption under subsection (3) if the court finds reasonable grounds for the departure and states on the record the grounds for the departure. [MCL 769.5(3) and (4).]

Taken together, MCL 769.5(3) and MCL 769.5(4) "establish a sentencing framework for misdemeanor convictions that is similar to the framework for felony convictions and the legislative sentencing guidelines." *Mason*, ___ Mich App at ___; slip op at 4.

The principle of proportionality requires the trial court to impose sentences that are "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Lydic*, 335 Mich App 486, 501; 967 NW2d 847 (2021) (quotation marks and citation omitted). A nonjail or nonprobation sentence for a defendant convicted of a nonserious misdemeanor "is a presumptively proportionate sentence, as a within-guidelines sentence is for a felony conviction." *Mason*, ___ Mich App at ___; slip op at 4.

In *Mason*, the trial court considered the defendant's criminal history, risk of recidivism, risk to public safety, and rehabilitation potential before sentencing him to serve 93 days in jail for a driving while license suspended conviction (DWLS), which is a nonserious misdemeanor. *Id*. at ___; slip op at 4-5. On appeal, this Court recognized that the trial court considered the defendant's criminal history but vacated and remanded because "[t]he district court's explanation for its sentence should have included an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. at ___; slip op at 5. The *Mason* Court opined that "relevant factors would include those that demonstrate circumstances taking this particular case outside the realm of the ordinary DWLS case." *Id*.

In this case, defendant was convicted of misdemeanor animal cruelty, which also is a nonserious misdemeanor. See MCL 769.5(7) (adopting the definition of "serious misdemeanor" from the William Van Regenmorter Crime Victim's Rights Act); MCL 780.11(1)(a) (listing specific offenses as serious misdemeanors). The district court clearly explained why the 93-day sentence was appropriate for defendant. It found that defendant had left the dog unattended for "a lengthy and outrageous period of time" and noted the terrible condition of the apartment as shown in the trial exhibits. It noted that jail was "not the first option for the Court when fashioning these types of sentences." But the court believed that defendant showed a "total lack of remorse," had been "blaming those who have had the best interest of the dog as their priority," and "[saw] herself as the victim and probably will continue to see herself as the victim." Given defendant's consistent

failure to comply with court orders and violation of her bond conditions while the case was pending, the district court doubted that defendant would comply with probation conditions. Under these circumstances, the court believed that "a strong statement needs to be made."

We hold that the district court sufficiently articulated facts that justified sentencing defendant to serve 93 days in jail, despite the statutory presumption of a nonjail or nonprobation sentence. It acknowledged that jail was not an ordinary sentence for this type of offense but highlighted several circumstances that took this particular case outside the realm of the ordinary animal cruelty case. See *id.* The court also considered the possibility of probation but found that defendant was not a good candidate. Having considered all its sentencing options and the circumstances of the offense and the offender, see *id.*, the district court reasonably determined that a 93-day sentence was appropriate.

## IV. CONCLUSION

Defendant's Fourth Amendment rights were not violated when her landlord consented to allow an animal control officer to enter her apartment, and defendant's sentence was proportionate.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron